UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LAUREN ASHLEY BAEZ,<br><br>                          Debtor. | Chapter 7<br><br>Case No. 16-10492-MEW |
| LAUREN ASHLEY BAEZ,<br><br>                          Plaintiff,<br><br>                          -against-<br><br>NATIONAL COLLEGIATE TRUST,<br>VL FUNDING LLC, and NAVIENT,<br><br>                          Defendants. | Adv. Proc. No. 16-01075-MEW |

**MEMORANDUM OPINION REGARDING PLAINTIFF'S MOTIONS IN LIMINE**

A P P E A R A N C E S :

Neil E. Colmenares
ATTORNEY NEIL E. COLMENARES, P.C.
C/o Processing Center
6149 S. Rainbow Blvd.
Las Vegas, Nevada 89118
      Attorney for the Plaintiff

Geoffrey J. Peters, Esq.
Weltman Weinberg & Reis Co., L.P.A
3705 Marlane Drive
Grove City, Ohio 43123
      Attorney for National Collegiate Trust 2004-2

**MICHAEL E. WILES**
**United States Bankruptcy Judge**

       In or around 2004, Lauren Baez borrowed approximately $23,000 from Bank of America; the current loan balance is approximately $28,000. ECF No. 30 at pages 1-2 (Plaintiff's Proposed Findings of Fact). In 2016, Baez filed a voluntary chapter 7 petition and confirmed the existence of the debt on her schedules of unsecured claims. She also commenced this adversary proceeding

against "National Collegiate Trust" as the purported assignee of the debt, seeking a declaratory judgment that the debt should be discharged. ECF No. 1 at pages 3-4 (¶¶ 12-16). Subsequently, with Baez's consent, the Court granted a request by The National Collegiate Student Loan Trust 2004-2 (the "Loan Trust") to intervene as the real party in interest.

Baez contends that the loan does not qualify for the exceptions for discharge that are set forth in section 528(a)(8)(A) of the Bankruptcy Code, or alternatively that the debt should be discharged because Baez would otherwise experience an "undue hardship." 11 U.S.C. § 523(a)(8). The Loan Trust argues that the loan is not dischargeable under 11 U.S.C. §§ 523(a)(8)(A)(i) because it is an educational loan guaranteed by a nonprofit institution. Joint Proposed Pretrial Order at page 2. In addition, the Loan Trust claims that the loan is not dischargeable under 11 U.S.C. § 523(a)(8)(A)(ii)) because it is an obligation to repay funds received as an educational benefit. *Id.* The Loan Trust also disputes Baez's contention that a failure to discharge the debt would lead Baez to experience an "undue hardship" within the meaning of 11 U.S.C. § 523(a)(8).

Baez has filed two pretrial motions. First, she seeks to exclude from evidence her purported agreement with Bank of America, which has been offered as Loan Trust's Exhibit F. (ECF No. 33.) Her second motion (ECF No. 34) asks the Court to hold that Section 523(a)(8)(A)(ii) of the Bankruptcy Code does not apply to the loan as a matter of law. For the reasons set forth below, the Court denies the first motion (ECF No. 33), and defers consideration of the second motion (ECF No. 34) until trial.

## JURISDICTION AND POWER TO ISSUE A FINAL DECISION

The parties have agreed that this Court has subject matter jurisdiction over this adversary proceeding and personal jurisdiction over the parties. They also have agreed and consented, in the joint pretrial order, that the Court may enter a final order and judgment in this matter.

2

## THE MOTION TO EXCLUDE LOAN TRUST EXHIBIT F

The Loan Trust has included on its proposed list of trial exhibits a duplicate of a 6-page document, which the Loan Trust claims is Baez's 2004 loan agreement with Bank of America. Baez objects to the exhibit on the ground that the Loan Trust cannot establish its authenticity.

Under Rule 1003 of the Federal Rules of Evidence, which apply in this adversary proceeding by virtue of Rule 9017 of the Federal Rules of Bankruptcy Procedure, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Here, to the extent Baez relies on Rule 1003, it is she who has the burden of demonstrating "a genuine issue as to the authenticity of the unintroduced original, or as to the trustworthiness of the duplicate, or as to the fairness of substituting the duplicate for the original." *See United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988).

Further, under F.R.E. 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Under Rule 901, therefore, it is the Loan Trust—as the proponent of the exhibit—who has to show that the exhibit is the 2004 loan agreement. Rule 901(b) of the Federal Rules of Evidence provides a non-exhaustive list of evidence that can be used to establish the proponent's burden under Rule 901(a). That list includes (i) "testimony of a witness with knowledge that an item is what it is claimed to be"; and (ii) "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." F.R.E. 901(b)(2) and (4).

Here, the Loan Trust has offered in evidence a duplicate of a six-page Non-Negotiable Credit Agreement between Baez and Bank of America. Baez argues that the Court should rule—

pretrial—that there is no possibility that the Loan Trust can carry its burden under Rule 901 and that the exhibit is inadmissible. Baez points out that the first two pages of the agreement are paginated "1 of 2" and "2 of 2," while the last four pages are paginated "3 of 6," "4 of 6," "5 of 6," and "6 of 6." Baez and her co-signer signed page 2 of 2. In light of the inconsistent pagination, Baez claims, "there is no . . . way . . . to determine that [the last 4 pages] were originally attached to the [the first 2 pages], and were agreed to by the Plaintiff." ECF No. 33. On that basis, Baez seeks a pretrial ruling excluding the document from evidence as a matter of law.

The motion is not well-taken. Witness testimony may be able to authenticate the full document and there is no reason to foreclose a witness from offering such testimony. In addition, there are some features of the proposed exhibit that suggest that it is, in fact, a single document. Although the pagination is inconsistent (as Baez contends), the Court notes that on page 2 of the Exhibit – a portion that Baez admits that she signed – there is a certification, by Baez, she had read, understood and agreed to the terms "on all six (6) pages" of the agreement. In addition, each of the six pages of the exhibit bears in the lower left corner a number that, to the extent it is legible, appears to begin with "BK.04-05.C8X1" and end with "104." This indicates that, despite the inconsistency in pagination, the six pages of the exhibit do go together.

In her motion, Baez relies on decisions that are not controlling here. In *Dreyfuss v. eTelecare Global Solutions-US*, the defendant "acknowledge[d] that it could not locate a complete copy of the arbitration agreement which [plaintiff] signed" and, instead, sought to compel arbitration based on an incomplete copy. *Dreyfuss v. eTelecare Global Solutions-US, Inc.*, 349 Fed. Appx. 551, 552 (2d Cir. 2009). The trial and appellate courts held that any agreement that the parties might have reached was not enforceable because the defendant could not prove its terms. *Id.* at 555. Similarly, in *National Collegiate Student Loan Trust 2003-1 v. Thomas*, 129

4

So.3d 1231, 1233, (La. App. 2 Cir. 2013), in seeking summary judgment in a loan collection suit, the plaintiff offered in evidence only two pages of a four-page application/promissory note; the defendant argued that the document was incomplete and also denied signing it. For this and other reasons, the court held that summary judgment was inappropriate. *National Collegiate Student Loan Trust 2003-1 v. Thomas*, 129 So.3d at 1235.

In this case, by contrast, the Loan Trust wants an opportunity to offer testimony at the trial to show that the offered exhibit is a copy of the complete agreement between Baez and Bank of America, and there are other features of the document that may support a determination of admissibility. There is nothing in *Dreyfuss* or *Thomas* that suggests that the Loan Trust should not have the opportunity to demonstrate the admissibility of the exhibit at trial.

In another decision cited by Baez, *National Collegiate Student Loan Trust 2006-2 v. Ramirez*, 2017 WL 929527, at *3 (Tex. App. 2017), the plaintiff offered as purportedly one document disparate documentation that, on its face, did not belong together. The court noted: "[t]he header of the . . . Pool Supplement states 'Page 1 of 4' and lists part of a website address and a date in the footer. The header for 'Schedule 2' begins at the bottom of 'Page 4 of 4,' and the next page lists no page number and does not include the web address of the preceding four pages. *Therefore, it does not appear to be part of the 'Schedule 2' referred to in the 2006-2 Pool Supplement*." *Id.* (emphasis added). In this case, however – as noted above – there are several indications that the six pages of the exhibit do belong together.

Of course, if there are any other internal inconsistencies in the proposed exhibit, Baez is free to point them out at trial and also to question the Loan Trust's witnesses. She may also renew her objections to the use of the exhibit at trial. To date, however, she has not identified any circumstances that would warrant a ruling that the exhibit is inadmissible as a matter of law.

5

Finally, Baez also cites Section 9-105 of the Uniform Commercial Code (the "UCC"). That section of the UCC sets forth the standard for establishing that a secured party has control of electronic chattel paper and that the chattel paper has been assigned to a party. However, Baez admits that she owes the loan to "National Collegiate Trust," whom she sued in this adversary proceeding for a declaratory judgment. She also listed "NCT" as an unsecured creditor. Section 9-105 of the UCC is not implicated in this adversary proceeding, where the existence of the debt is not disputed and where the sole issues are undue hardship and the dischargeability of the loan.

### THE REQUEST FOR A PRETRIAL RULING AS TO WHETHER THE LOAN IS AN OBLIGATION TO REPAY AN EDUCATIONAL BENEFIT

Baez also seeks a ruling that the underlying loan does not constitute an obligation to repay funds that were conferred as an educational benefit. This particular issue has led to numerous contrary rulings in other cases. *Compare Campbell v. Citibank (In re Campbell)*, 547 B.R. 49, 55 (Bankr. E.D.N.Y. 2016) (a credit-based bar exam loan from a for-profit institution was not an "educational benefit") *and In re Kashikar*, 567 B.R. 160, 167 (9th Cir. BAP 2017) (holding that a "loan" is not an "educational benefit" within § 523(a)(8)(A)(ii)) *with In re Roy*, No. 08 33318, 2010 WL 1523996, at *1 (Bankr. D.N.J. Apr. 15, 2010) (a loan from the Sylvan Learning Center, which "provided an educational benefit to [the debtor's] child in the form of tutoring," was an "educational benefit") *and In re Beesley*, No. 12-2444, 2013 WL 5134404, at *3 (Bankr. W.D. Pa. Sept. 13, 2013) (on a motion for summary judgment, holding that bank loan that was named "for students" and was used for tuition, room and board, and books was an "educational benefit").

However, it is not clear that it will even be necessary to address this question in this particular case. The Loan Trust contends that the loan was guaranteed by a not-for-profit

institution; the parties agree that this issue requires a trial, and if the facts support the contention then the "educational benefit" issue will not be relevant. Ruling on the issue in advance of trial would not alter the evidence to be offered, the time that trial will require or the work that the parties must do to prepare for trial.

Under the circumstances, the Court will exercise its discretion to defer a ruling on this issue until such time as a ruling is required. *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (noting that the purpose of an *in limine motion* is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial" (internal citation omitted)); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) (reserving judgment on an *in limine* motion until trial).

## CONCLUSION

For the reasons set forth above, Baez's motion to exclude the Loan Trust's Exhibit F (ECF No. 33) is denied without prejudice to her right to renew her objection at trial. In addition, the Court finds that it is unnecessary at this point to rule on Baez's other motion (ECF No. 34) because the adversary proceeding may ultimately be resolved on other—independent—grounds.

Dated:  New York, New York
         December 22, 2017

　　　　　　　　　　　　　　　　　　　　　　 /s/ Michael E. Wiles
　　　　　　　　　　　　　　　　　　　　　　THE HONORABLE MICHAEL E. WILES
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE